IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

_____

CARLA SMITH, individually and
on behalf all others similarly situated,

      Plaintiff,

v.

STATE AUTO PROPERTY AND
CASUALTY INSURANCE COMPANY,

      Defendant.

Civil Action No. 4:20-cv-36

JURY DEMANDED

_____

## CLASS ACTION COMPLAINT
_____

COMES NOW Plaintiff, Carla Smith ("Smith" or "Plaintiff"), individually and on behalf of all others similarly situated, and states and alleges the following for her Complaint against State Auto Property and Casualty Insurance Company (hereinafter "State Auto"):

**PARTIES, RESIDENCY, JURISDICTION AND VENUE**

1. Plaintiff Smith is a citizen and resident of Farmville, North Carolina. At all times relevant hereto, Smith owned a home located at 3762 Eversmith Lane, Farmville, North Carolina, located in Pitt County, North Carolina (the "Insured Premises").

2. Defendant State Auto is organized under the laws of the State of Iowa with its principal place of business in Columbus, Ohio. State Auto is authorized to sell property insurance policies in the State of North Carolina and is engaged in the insurance business in the State of North Carolina, including issuing insurance policies covering property in Pitt County, North Carolina.

3. The events giving rise to Plaintiff Smith's individual claims that are the subject of this action occurred in the Greenville Division of the Eastern District of North Carolina.

4. On information and belief, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

5. This Court has personal jurisdiction over State Auto because it has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in the State of North Carolina.

## FACTS

### A. The Property Insurance Policy and Casualty Loss

6. State Auto is an insurance company that provides property coverage for homes, commercial buildings, and other structures. State Auto is one of the nation's largest insurers.

7. State Auto sells its property insurance policies in, *inter alia*, the state of North Carolina.

8. Smith was insured pursuant to an insurance contract whereby State Auto agreed to insure, *inter alia,* Smith's property located on the Insured Premises against property damage, bearing Policy No. HDP0037053 (the "Smith Policy").

9. The Smith Policy provided insurance coverage for direct physical loss to the residence and structures located on the Insured Premises, except as specifically excluded or limited by the Smith Policy.

10. This lawsuit only concerns property insurance coverage for buildings, and *not* personal contents, such as clothes and furniture.

11. Pursuant to the Smith Policy, Smith paid State Auto premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

12. On or about December 20, 2017, Smith's dwelling located on the Insured Premises suffered direct physical loss caused by covered peril(s) (the "Loss").

13. The Smith Policy was in effect at the time of the Loss, and the Loss is compensable under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion.

14. Smith promptly notified State Auto of the Loss and made a claim against the Smith Policy.

15. After its inspection, State Auto determined that the Loss was covered by the terms of the Smith Policy.

16. State Auto calculated its actual cash value ("ACV") payment obligation to Smith by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), then subtracted depreciation.

17. The Smith Policy, and the other property forms at issue in this pleading, do not permit the withholding or deduction of labor as depreciation as described below.

18. The Smith Policy does not define ACV.

**B. State Auto's Calculation of Smith's ACV Payment**

19. In adjusting Smith's claim, State Auto affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate the loss and make its ACV payment.

20. State Auto used commercially-available computer software to make its RCV, depreciation, and ACV calculations. State Auto uses this software to calculate RCV, depreciation, and ACV.

21. On or about January 18, 2018, State Auto calculated the RCV of Smith's damaged home at $46,338.54

3

22. State Auto then used the same software to calculate the depreciation for Smith's damaged structures at $6,022.19.

23. Smith was underpaid on her ACV claim as more fully described below.

**C. State Auto's Practice of Withholding Labor as Depreciation**

24. When it calculated Smith's ACV benefits owed under the Smith Policy, State Auto withheld costs for both materials and the labor required to repair or replace Smith's home as depreciation, even though labor does not depreciate in value over time. State Auto withheld labor costs throughout its ACV calculations as depreciation. State Auto also withheld labor costs as depreciation for other work necessary to repair and replace Smith's property.

25. Like all property insurance claims estimating software, the specific commercial claims estimating software used by State Auto allows for the depreciation of materials only or the depreciation of both material and labor in its depreciation setting preferences.

26. In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and laborers' overhead and profit necessary to restore property to its condition immediately prior to the loss, as well as removal costs to remove damaged property, under commercial claims estimating software.

27. State Auto's withholding of labor costs as depreciation associated with the repair or replacement of Smith's property resulted in Smith receiving payment for her losses in an amount less than she was entitled to receive under the Smith Policy. State Auto breached its obligations under the Smith Policy by improperly withholding the cost of labor as depreciation.

28. Plaintiff cannot determine the precise amount of labor that has been withheld based only upon the written estimate provided. To determine the precise amount of labor withheld, it is

4

necessary to have access to the commercial property insurance program at issue, as well as the electronic file associated with her estimate.

29. While an insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold repair labor as depreciation under State Auto's policy forms at issue in North Carolina. State Auto's failure to pay the full cost of the labor necessary to return Smith back to her pre-loss condition left Smith under-indemnified and underpaid for her loss.

30. State Auto materially breached its duty to indemnify Smith by withholding labor costs associated with repairing or replacing Smith's property in its ACV payment as depreciation, thereby paying Smith less than she was entitled to receive under the terms of the Smith Policy.

## AMOUNT IN CONTROVERSY

31. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

32. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit as a class action on behalf of himself and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

33. The proposed class that Plaintiff seeks to represent is defined as follows:

> All State Auto policyholders (or their lawful assignees) who made: (1) a structural damage claim for property located in the State of North Carolina; and (2) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the

5

Case 4:20-cv-00036-BO    Document 1    Filed 02/27/20    Page 5 of 12

withholding of non-material depreciation causing the loss to drop below the applicable deductible.

The class period for the proposed class is the maximum time period as allowed by applicable law.

The class excludes all claims arising under policy forms expressly permitting the "depreciation" of "labor" within the text of the policy form and any claims in which the initial actual cash value payment exhausted the applicable limits of insurance

34. Plaintiff reserves the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

35. Plaintiff and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policy, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, prejudgment interest on the amounts improperly withheld, for the time period of withholding.

36. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people geographically dispersed across North Carolina have been damaged by State Auto's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by State Auto or from information readily available to State Auto.

37. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

6

38. State Auto has acted on grounds generally applicable to the proposed class in that State Auto has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that State Auto will continue to withhold labor to reduce the amount it pays to its insureds under these policies absent this lawsuit.

39. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether State Auto's policy language allows it to withhold labor costs in its calculation of ACV payments;

   b. Whether State Auto's policy language is ambiguous;

   c. Whether State Auto's withholding of labor costs in its calculation of ACV payments breaches the insurance policies;

   d. Whether State Auto has a custom and practice of withholding labor costs in its calculation of ACV payments;

   e. Whether Plaintiff and members of the proposed class have been damaged as a result of State Auto's withholding of labor costs in its calculation of ACV payments; and

   f. Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

40. Plaintiff's claim is typical of the claims of the proposed class members, as they are all similarly affected by State Auto's custom and practice concerning the withholding of labor. Further, Plaintiff's claims are typical of the claims of the proposed class members because her claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiff is not different in any material respect from any other member of the proposed class.

41. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interest does not conflict with the interests of the proposed class she seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

43. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

44. Questions of law or fact common to Plaintiff and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amounts due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by State Auto's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

45. Class certification is further warranted because State Auto has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

46. Plaintiff may seek, in the alternative, certification of issues classes.

47. Rule 23I(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I
## BREACH OF CONTRACT

48. Plaintiff restates and incorporates by reference all preceding allegations.

49. State Auto entered into policies of insurance with Plaintiff Smith and members of the proposed class. These insurance policies govern the relationship between State Auto and Smith,

and members of the proposed class, as well as the manner in which claims for covered losses are handled.

50. The policies of insurance between State Auto, Smith and the other members of the proposed class are binding contracts under North Carolina law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

51. State Auto drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation.

52. In order to receive ACV claim payments, Smith and the putative class members complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

53. State Auto breached its contractual duty to pay Smith, and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

54. State Auto's actions in breaching its contractual obligations to Smith and members of the proposed class benefitted and continue to benefit State Auto. Likewise, State Auto's actions damaged and continue to damage Plaintiff and members of the proposed class.

55. State Auto's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and members of the proposed class.

56. In light of the foregoing, Plaintiff and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts State Auto unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law.

## COUNT II
## DECLARATORY JUDGMENT AND RELIEF

57. Plaintiff restates and incorporates by reference all preceding allegations.

58. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C.

§ 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

59. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

60. Smith and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

61. Plaintiff seeks, individually and on behalf of the proposed class, a declaration that State Auto's property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed herein.

62. Plaintiff further seeks, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

63. Plaintiff and members of the proposed class have suffered injuries.

## JURY DEMAND

64. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiff as the representative of the class, and appointing Plaintiff's attorneys as counsel for the class;

2. Enter a declaratory judgment, declaring that State Auto's withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to Smith and members of the class;

3. Enter a declaration, and any preliminary and permanent injunction and equitable relief against State Auto and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4. Enter an order that State Auto specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiff and members of the proposed class;

6. Award costs, expenses, and disbursements incurred herein by Plaintiff and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

7. Pre- and Post-Judgment interest; and

8. Grant such further and additional relief as the Court deems necessary and proper.

Respectfully submitted, this the 27th day of February, 2020.

    WHITFIELD BRYSON & MASON LLP

    /s/ Matthew E. Lee
    Matthew E. Lee
    N.C. Bar. No. 35405
    900 W. Morgan St.
    Raleigh, NC 27603
    Telephone: (919) 600-5005
    Facsimile: (919) 600-5035
    matt@wbmllp.com

    *Attorney for Plaintiff and*
    *Putative Class Representative*